US DISTRICT COURT INDEX SHEET

CGL 06/29/05

3:05-CV-1309 CSC HOLDINGS INC V. ORION COMMUNICATION

*1*

*CMP.*

Jeffrey Isaacs, Bar N[illegible]42622
Gerald P. Kennedy, Bar No. 105887
PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP
530 B Street, Suite 2100
San Diego, California 92101
Telephone: (619) 238-1900
Facsimile: (619) 235-0398

Daniel J. Lefkowitz (Pro Hac Vice application pending)
Wayne R. Louis (Pro Hac Vice application pending)
Patrick J. Sullivan (Pro Hac Vice application pending)
LEFKOWITZ, LOUIS, SULLIVAN & HOGAN, L.L.P.
350 Jericho Turnpike, Suite 300
Jericho, New York 11753
Telephone: (516) 942-4700
Facsimile: (516) 942-4705

Attorneys for Plaintiff CSC Holdings, Inc.

FILED
05 JUN 28 PM 1:12
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CSC HOLDINGS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>ORION COMMUNICATION d/b/a BLACKCHIPS.COM, MICHAEL SHERIDAN, SHARON AVENS, SOMMAY KONGMALAY, JOHN DOES NOS. 1-10, JANE DOES NOS. 1-10, UNIDENTIFIED CORPORATIONS NOS. 1-10, and UNIDENTIFIED BUSINESS ENTITIES NOS. 1-10,<br><br>Defendants | '05 CV 1309 DMS (JFS)<br>Case No.<br><br>**COMPLAINT** |

Plaintiff CSC Holdings, Inc. (hereinafter referred to as "Cablevision"), by its attorneys, as and for its claims against the defendants, alleges as follows:

**Summary of Claims**

1. This action seeks declaratory and injunctive relief and monetary damages with respect to defendants' statutorily prohibited manufacture, modification, sale and/or distribution of "pirate" cable television converter-decoders, descrambling devices, and related equipment

(hereinafter "pirate" decoders or descramblers) into the "black market" for the purpose of enabling the unauthorized reception and theft of Cablevision's cable television programming services. Defendants Orion Communication d/b/a blackchips.com, Michael Sheridan, Sharon Avens, Sommay Kongmalay, John Does Nos. 1-10, Jane "Does" Nos. 1-10, Unidentified Corporations 1-10 and Unidentified Business Entities 1-10 (collectively, the "defendants") have been in the business of manufacturing, selling or otherwise distributing "pirate" cable television devices. The defendants have aided and assisted in the use of such equipment to intercept plaintiff's scrambled cable television programming services in direct violation of 47 U.S.C. § 553 (a)(1). This Complaint also asserts a supplemental state law claim for imposition of a constructive trust.

**Jurisdiction and Venue**

2. This action arises under 47 U.S.C. § 553 (a)(1).

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims. Venue is properly established in the Southern District of California pursuant to 28 U.S.C. § 1391(b).

**Parties**

4. At all times hereinafter mentioned, Cablevision is a corporation organized and existing under the laws of the State of Delaware. It is a national multiple cable system operator and it and its subsidiaries own and operate numerous cable systems in, inter alia, New York, Connecticut, New Jersey, and Pennsylvania. Cablevision also owns, in whole or in part, a number of cable television programming originators such as American Movie Classics ("AMC"), Independent Film Channel, Womens' Entertainment ("WE"), and Madison Square Garden Network ("MSG").

5. At all times hereinafter mentioned, defendant Michael Sheridan is listed as the Chief Executive Officer and president of the company with addresses at 4119 Wayside Lane, Suite D, Carmichael, CA 95608 and 14440 Bevan Street, Sloughhouse, California 95683.

6. At all times hereinafter mentioned, defendant Sharon Avens is a principal, officer, director, employee or agent of Orion Communication Inc. d/b/a blackchips.com. She has an address at 2947 Doria Way, San Diego, California 92139.

7. At all times hereinafter mentioned, defendant Sommay Kongmalay is an officer, director, employee or agent of Orion Communication Inc. d/b/a blackchips.com. He has an address at 2947 Doria Way, San Diego, California 92139.

8. At all times hereinafter mentioned, defendants John Does Nos. 1-10, Jane Does Nos. 1-10, Unidentified Corporations Nos. 1-10 and Unidentified Business Entities Nos. 1-10 are as yet unidentified officers, directors, partners, business associates, joint venturers, owners and/or employees of the defendants and co-conspirators in their pirate cable television decoder distribution scheme with a business address at 2947 Doria Way, San Diego, California 92139 and/or unknown addresses.

**Factual Background**

**The Cable Operator**

9. Cablevision and its affiliates operate cable television systems pursuant to franchises awarded to them by political subdivisions. These franchises authorize them to construct, operate, and maintain cable television systems in such areas. Cablevision provides cable television services to subscribers who request and pay for them. Some of the programming offered by Cablevision includes American Movie Classics ("AMC"), Independent Film Channel, Womens' Entertainment ("WE"), and Madison Square Garden Network ("MSG"), the originators of which are wholly or partially owned by Cablevision.

10. Cablevision's programming is offered to its subscribers in "packages" of programming services. "Basic" and "Family" tiers are packages of programming services that a subscriber receives for a regular monthly fee. Subscribers may also elect to purchase certain premium programming services such as Cinemax, Home Box Office, and Showtime, for an additional monthly charge per service.

11. Additionally, Cablevision offers pay-per-view programming, a service enabling a subscriber to purchase individual movies, sporting events, or other entertainment for a per-event fee over and above the subscriber's regular monthly fee.

12. Each subscriber is entitled to receive only those programming services that he or she selects and purchases.

13. The signals for most of Cablevision's cable television services are received via satellite and retransmitted from Cablevision's satellite reception facilities to subscribers' homes through a network of cable wiring and equipment (the "System").

14. Generally, in order for a subscriber to receive the services described above on his or her television set, Cablevision provides each subscriber with a device known as a "converter," which converts the multiple signals simultaneously transmitted over the System into different "channels" that can be viewed on subscribers' television sets. To prevent subscribers from receiving premium and pay-per-view programming services other than those for which they have paid, Cablevision encodes or "scrambles" the signals for its premium and pay-per-view programming services. Subscribers purchasing such scrambled programming services are provided with a device known as a "descrambler" or "decoder," which is incorporated into the converter. The descrambler decodes the scrambled service so that the programming selected and purchased can be viewed clearly on the subscriber's television set. Programming services not purchased by an individual subscriber will continue to be scrambled and therefore will be unviewable on that subscriber's television set.

15. Plaintiff's systems are "addressable," meaning that the converter-decoder that Cablevision provides each subscriber is programmed by a central computer to enable the reception of only those programming services specifically selected and purchased by individual subscribers.

16. Encoding ("scrambling") is a primary security method employed by plaintiff and other cable television operators to prevent subscribers from receiving services for which they have not paid.

17. It is possible for a dishonest individual to install an unauthorized or "pirate" converter-decoder (one illegally programmed to descramble all of plaintiff's programming services) onto the plaintiff's cable television system, or to use a pirate device in conjunction with the converter-decoders issued by Cablevision to its subscribers, or otherwise to tamper with plaintiff's equipment in order to receive all of Cablevision's scrambled programming without authorization and without making payment therefor.

18. Pay-per-view, which is one of Cablevision's scrambled services, includes selections that typically range in price from approximately $3.95 to $54.95. Pay-per-view programming is available throughout the day on a per-event or per-movie basis. Premium services, which are also scrambled by Cablevision, range in price from approximately $1.95 to $14.95 per month per service. Hence, an individual could conceivably steal hundreds of dollars worth of Cablevision's premium and pay-per-view services each month through the use of a "pirate" converter-decoder.

19. Theft of cable television service has a negative impact on the governmental units in the areas serviced by Cablevision as they derive franchise fees from a cable operator's gross revenues. The lost revenues to cable operators adversely affect the ability of those operators to purchase and maintain a high quality of programming services for their subscribers. The interception of Cablevision's signals also result in losses to the creators and/or owners of the copyrighted works that are transmitted via the signals. Furthermore, the maintenance of unauthorized connections and use of pirate converter-decoders may result in signal "leakage," which violates FCC regulations and for which Cablevision may suffer the imposition of substantial fines and other sanctions.

20. Cablevision's signal is a private telecommunication not intended for public use.

**Defendants' Misconduct**

21. The defendants have been engaged in a scheme to illegally manufacture, sell or otherwise distribute "pirate" cable television descramblers and other pirate devices for profit.

22. Defendants have manufactured, sold and/or distributed "pirate" cable television devices with the intent and specific knowledge that such devices would enable their ultimate

users to receive plaintiff's premium and pay-per-view cable television programming services without the authorization of the plaintiff or the owners and/or creators of the copyrighted works, and without having paid for those programming services.

23. The "pirate" converter-decoders that defendants manufacture, modify, sell and/or distribute have been modified to circumvent Cablevision's premium and pay-per-view encryption technology. These "pirate" devices have the capability to unlawfully descramble all analog-based scrambled premium and pay-per-view cable television programming transmitted on Cablevision's system.

**First Claim for Relief**

**Violation of the Communications Act, 47 U.S.C. § 553 (a)(1)**

24. Plaintiff incorporates by reference paragraphs 1 through 23 inclusive as if fully set forth herein.

25. The defendants have been engaged and continue to be engaged in the manufacture, sale and/or distribution of "pirate" cable television devices, knowing or having reason to know that such equipment is used in the unauthorized decryption, interception and receipt of plaintiff's premium and pay-per-view cable television programming services. Defendants' manufacture, sale and/or distribution of "pirate" cable television devices for the theft and unauthorized reception of plaintiff's premium and pay-per-view cable television services violates section 553 (a)(1) of the Communications Act, Title 47 of the United States Code.

26. The "pirate" devices and equipment manufactured, sold and/or distributed by the defendants are specifically designed to cause descrambling of the plaintiff's encoded programming services without authorization, thereby permitting reception of the plaintiff's programming without payment for those services. Said conduct violates 47 U.S.C. section 553 (a)(1).

27. By using a "pirate" cable television device received from the defendants, a dishonest individual may view the highest level of plaintiff's analog-based cable television programming services, including premium and pay-per-view, without paying the additional monthly charge per-service or per-event fee for said programming.

28. Plaintiff's cable television programming services that are intercepted and stolen by the "pirate" equipment that the defendants have manufactured, distributed and/or sold are communications offered over a cable system under 47 U.S.C. section 553 (a)(1) which are protected from unauthorized interception and theft thereunder.

29. The defendants violated the Communications Act willfully and for the purposes of their direct or indirect commercial advantage and/or private financial gain. Defendants were aware of the illegality of their actions.

30. Plaintiff has not authorized or consented to the manufacturing, assembling, modifying, importing, exporting, marketing, selling, delivering, furnishing, shipping, renting, repairing, distributing, leasing or use by the defendants of the aforementioned electronic equipment, nor has the plaintiff authorized or consented to the rendering of assistance by the defendants in the reception or interception of its cable television programming services without its authorization.

31. The plaintiff is a "person aggrieved" by the defendants' violations of the Communications Act, and is authorized by 47 U.S.C. section 553 (c)(1) to commence this action against the defendants for violations of section 553 (a)(1) of the Communications Act.

32. The defendants' violations have injured and will continue to injure plaintiff's ability to maximize its revenues by depriving it of the benefit of subscribers to its programming services and by injuring its goodwill and reputation. As a further result of such violations, defendants have gained and will continue to gain unjust enrichment.

33. Moreover, honest paying subscribers may have their services negatively affected as a result of defendants' violations. Furthermore, defendants' violations could result in signal leakage, which poses a threat to public safety.

34. Absent the Court's entry of injunctive relief, the defendants will continue to violate 47 U.S.C. section 553 (a)(1). The defendants knew or should have known that the sale and use of such electronic equipment was prohibited by law. Such violations of the Communications Act have caused and will continue to cause plaintiff irreparable harm. In addition to diminishing plaintiff's revenues, the defendants' unlawful conduct injures plaintiff's

reputation and goodwill, its ability to attract and finance the future acquisition of quality services, and further impairs its ability to enhance its future growth and profitability.

35. Plaintiff has no adequate remedy at law to redress such violations.

**Plaintiff's Second Claim for Relief**

**Supplemental Claim for Imposition of Constructive Trust**

36. Plaintiff repeats and realleges each allegation contained in paragraphs 1 through 35, inclusive.

37. The devices sold and/or distributed by the defendants allow purchasers thereof to receive all of plaintiff's cable television programming services, including premium and pay- per-view programming services, without payment to plaintiff therefor.

38. Defendants' sales and distributions of "pirate" cable television devices to plaintiff's subscribers diverts to the benefit of the defendants those revenues and profits otherwise accruing to plaintiff from its provision of premium and pay-per-view programming services to its subscribers.

39. All amounts received by defendants from their sales and/or distributions of "pirate" devices to plaintiff's subscribers represent revenues and profits otherwise accruing to plaintiff.

40. The defendants are unjustly enriched by the diversion of revenues and profits to them, as described in the preceding paragraph. This unjust enrichment is enjoyed at the expense of and to the detriment of the plaintiff.

41. The amount received by the defendants which represent diversion of profits and revenues due and owing to plaintiff, together with all gains received by defendants from their transfer or use, or any property substituted by defendants therefor, in equity and good conscience belong to plaintiff.

**WHEREFORE**, the plaintiff requests that this Court grant the following relief:

(1) Declare that the defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television equipment designed known or intended to cause decoding plaintiff's cable television programming signals without plaintiff's authorization violated 47

U.S.C. section 553(a)(1) and that such violations were committed willfully and for purposes of defendants' direct or indirect commercial advantage and/or private financial gain;

(2) In accordance with 47 U.S.C. section 553 (c)(2)(a), enjoin the defendants, their agents, servants, employees, affiliated business entities, assigns and those controlled directly or indirectly by any of them from the manufacture, modification, sale, distribution, advertisement for and/or use of electronic equipment designed for the unauthorized interception of cable television service;

(3) In accordance with 47 U.S.C. section 553(c)(2)(B), award the plaintiff against the defendants:

(a) either the actual damages which the plaintiff has suffered, together with any additional profits earned by defendants as a result of defendants' unauthorized manufacture, modification, sale and/or distribution of "pirate" cable television descrambling devices; or alternatively at plaintiff's election,

(b) statutory damages in a total amount of between $250 and $10,000 for all of defendants' prohibited "pirate" devices sold and/or distributed by the defendants in violation of 47 U.S.C. section 553 (a)(1), and, whether (a) or (b) is elected, and

(c) an additional sum of statutory enhanced damages of up to $50,000 pursuant to 47 U.S.C. § 553 (c)(3)(B) for defendants' violations of 47 U.S.C. section 553 (a)(1), based on defendants' having committed such violations willfully and for purposes of private financial gain;

(4) In accordance with 47 U.S.C. section 553 (c)(3)(A)(i), order an accounting of all profits and expenses realized by defendants in violation of the foregoing statutes, together with defendants' production of all records reflecting sales of their "pirate" descrambling devices; and

(5) In accordance with the equitable remedy of constructive trust, order that the full value of services converted by virtue of defendants' "pirate" cable television device sales operation be ordered returned by the defendants to plaintiff; and

(6) Pursuant to 47 U.S.C. § 553 (c)(2)(A), order the defendants' surrender and permanent transfer and ownership to plaintiff of their pirate devices, invoices, business records and other tools of their illegal business; and

(7) In accordance with 47 U.S.C. § 553 (c)(2)(C), direct defendants to pay plaintiff all of plaintiff's full costs, including reasonable attorneys' fees and investigative expenses; and

(8) Grant such other and further relief as is just.

DATED: June 27, 2005.

PROCOPIO, CORY, HARGREAVES
& SAVITCH LLP

By: ______________________
Jeffrey Isaacs, Attorneys for
Plaintiff CSC Holdings, Inc.

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained [illegible] ither replace nor supplement the filing and service [illegible] ngs or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial [illegible] rence of the United States in September 1974, is requ [illegible] r the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS**
CSC HOLDINGS, INC.

**DEFENDANTS**
SEE ATTACHED LIST

FILED
05 JUN 28 PM 1:06
CLERK U.S. DISTRICT COURT SOUTHERN DISTRICT OF CALIFORNIA
BY: DEPUTY

**(b)** County of Residence of First Listed Plaintiff SAN DIEGO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed ______
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Jeffrey Isaacs, Bar No. 042622
Procopio, Cory, Hargreaves & Savitch LLP
530 "B" Street, Suite 2100
San Diego, California 92101
Telephone: (619) 238-1900

Attorneys (If Known)

'05 CV 1309 - DMS (JFS)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- ☐ 1 U.S. Government Plaintiff
- ☒ 3 Federal Question (U.S. Government Not a Party)
- ☐ 2 U.S. Government Defendant
- ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

PERSONAL INJURY
- ☐ 362 Personal Injury— Med. Malpractice
- ☐ 365 Personal Injury — Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☒ 950 Constitutionality of State Statutes

**V. ORIGIN** (Place an "X" in One Box Only)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
47 U.S.C. section 533(a)(1) 28:1331bc cgl

Brief description of cause:
Unauthorized manufacture/sale of "pirate" cable boxes

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 **DEMAND** $75,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE ______ DOCKET NUMBER ______

DATE
6/27/05

SIGNATURE OF ATTORNEY OF RECORD
Jeffrey Isaacs

**FOR OFFICE USE ONLY**

RECEIPT # ______ AMOUNT ______ APPLYING IFP ______ JUDGE ______ MAG. JUDGE ______

114981 JG 250 - 6/28/05

American LegalNet, Inc. www.USCourtForms.com

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I. (a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b.) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II. Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III. Residence (citizenship) of Principal Parties.** This section of the JS-44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV. Nature of Suit**. Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V. Origin**. Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a) Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI. Cause of Action**. Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII. Requested in Complaint**. Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII. Related Cases**. This section of the JS-44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature**. Date and sign the civil cover sheet.

American LegalNet, Inc. www.USCourtForms.com

**DEFENDANTS**

ORION COMMUNICATIONS d/b/a BLACKCHIPS.COM, MICHAEL SHERIDAN, SHARON AVENS, SOMMAY KONGMALAY, JOHN DOES NOS. 1-10, JANE DOES NOS. 1-10, UNIDENTIFIED CORPORATIONS NOS. 1-10 and UNIDENTIFIED BUSINESS ENTITIES NOS. 1-10.